# UNITED STATES DISTRICT COURT
# DISTRICT OF CONNECTICUT

EZRA BENJAMIN,
    *Plaintiff*,

v.

OMPRAKASH PILLAI, *et al.*,
    *Defendants*.

No. 3:16-cv-01721 (JAM)

**ORDER GRANTING MOTION FOR SUMMARY JUDGMENT**

Plaintiff Ezra Benjamin is an inmate at MacDougall-Walker Correctional Institution. Plaintiff brought this action under 42 U.S.C. § 1983 against certain members of the medical staff at MacDougall-Walker, principally including Dr. Omprakash Pillai. Plaintiff alleges claims of deliberate indifference to serious medical needs in violation of the Eighth Amendment against all defendants as well as a First Amendment retaliation claim against Dr. Pillai. Defendants have moved for summary judgment on all claims. After oral argument in this case, plaintiff moved for a preliminary injunction. I will grant defendants' motion for summary judgment and deny plaintiff's motion for a preliminary injunction.

### BACKGROUND

The following facts are undisputed or viewed in the light most favorable to plaintiff as the non-moving party. Plaintiff has suffered chronic sciatic nerve pain since roughly June 2015. *See* Doc. #18-2 at 43. On June 2, 2016, plaintiff transferred from another correctional facility to MacDougall-Walker, where he is currently housed. The medical transfer summary in plaintiff's medical file does not reflect any mention of lower back pain. *Id.* at 8-9. On June 13, plaintiff submitted an inmate request form seeking treatment for his lower back pain. Doc. #21 at 38. On June 17, plaintiff submitted another form addressing the same issue. The second request was

1

stamped received on June 20, and a nurse documented on June 23 that plaintiff was put in for an appointment. Doc. #18-4 at 2. On July 7, plaintiff filed a grievance detailing his medical condition and seeking treatment and better communication. Doc. #21 at 34.

Dr. Pillai examined plaintiff on July 15. He recommended blood and urine tests, back exercises, weight loss, naproxen as needed, and a lumbar x-ray. Doc. #18-3 at 3 (¶ 7); Doc. #18-2 at 65. Dr. Pillai allegedly called plaintiff a "pain in the ass" and threatened to withhold treatment if plaintiff continued to write grievances. Doc. #21 at 30 (¶ 10). Plaintiff was also denied a cane he requested. *Id.* (¶ 11).

On July 29, plaintiff filed another request form indicating that he had not received naproxen and that he had not had his x-ray scheduled. The form was stamped received on August 4, and staff responded on August 10 by indicating that the pharmacy no longer fills naproxen prescriptions "as needed," and plaintiff's chart was sent back to "MD" for a scheduled naproxen order. Doc. #18-4 at 3; Doc. #21 at 30 (¶¶ 14-15).

On August 22, plaintiff filed another grievance in which he stated that he awoke the night before in excruciating pain, reiterated his symptoms and complaints about lack of follow up, and requested a cane. Doc. #21 at 35. On August 30, plaintiff filled out another request form indicating that his right leg was numb and tingling and requesting someone to bring him to the medical clinic. A corrections officer brought him to the medical clinic, and a nurse told plaintiff that she would straighten out the naproxen order. Doc. #21 at 41; Doc. #18-2 at 36. Dr. Pillai was advised of and corrected the issue with the naproxen prescription on September 1. Doc. #18-3 at 2 (¶ 10); Doc. #18-4 at 4; Doc. #18-2 at 63.

Plaintiff filed another request form on September 8 in which he acknowledged the naproxen prescription was filled, but stated that Dr. Pillai had denied plaintiff's request for a

2

cane. Doc. #18-4 at 4. Plaintiff received an x-ray on September 9. Doc. #18-2 at 17. Staff responded to plaintiff's request on September 15 indicating that plaintiff was scheduled to see Dr. Naqvi (who is not named as a defendant in this action) on September 18 to review his x-ray results. Doc. #18-4 at 4. On September 19, plaintiff filed another request form complaining that he missed his appointment with Dr. Naqvi because the corrections officer failed to timely release him from his cell and that the naproxen was not working. Doc. #21 at 43.

On October 17, 2016, plaintiff filed the federal court complaint in this matter. Doc. #1. The parties have subsequently submitted additional facts in their summary judgment papers. On October 17, Dr. Pillai saw plaintiff again and noted unremarkable x-ray findings. Doc. #18-3 (¶ 11). Based on his exam, Dr. Pillai ordered an MRI. *Id.* (¶ 12). Dr. Pillai submitted the request for the MRI to the Utilization Review Committee (URC) on October 18. *Id.* (¶ 13). This was submitted as a priority-four request, meaning a decision would be made on the request within two months. *Id.* (¶ 14). Plaintiff was informed on November 29 that his MRI was scheduled and that he was authorized a prescription for a muscle relaxer. *Id.* (¶ 16). On December 12, plaintiff submitted a "Request for Reasonable Accommodation" requesting a cane and back brace. Doc. #21 at 48. This request was denied on December 16 by Dr. Pillai as not medically indicated. *Ibid.*

The MRI was administered on January 3, 2017. Doc. #18-2 at 15. It revealed a number of diffuse disc bulges in the spine, some spinal stenosis, and a hemangioma. *Ibid.* Dr. Pillai reviewed the MRI results on January 18 and made a request to the URC for steroid injections and a neurosurgery consult. Doc. #18-3 at 5 (¶ 18). The URC approved the injections but did not approve the surgery consult because the exam results were relatively normal. *Id.* (¶ 19).

On December 18, 2017, plaintiff filed a motion for a preliminary injunction seeking an order that he be prescribed opiate pain relievers or THC pills, that the URC permit him to consult

3

with a neurosurgeon, and that plaintiff be afforded additional recreation time in order to rehabilitate and lose weight. Doc. #30 at 5. In his memorandum, plaintiff noted that all other "first line" medications—*i.e.*, Tylenol, naproxen, Gabapentin, baclofen, Flexeril, and Elavil— have not relieved his pain. *Id.* at 3-4.

## DISCUSSION

The principles governing the Court's review of a motion for summary judgment are well established. Summary judgment may be granted only if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). I must view the facts in the light most favorable to the party who opposes the motion for summary judgment and then decide if those facts would be enough—if eventually proved at trial—to allow a reasonable jury to decide the case in favor of the opposing party. My role at summary judgment is not to judge the credibility of witnesses or to resolve close contested issues but solely to decide if there are enough facts that remain in dispute to warrant a trial. *See generally Tolan v. Cotton*, 134 S. Ct. 1861, 1866 (2014) (*per curiam*); *Pollard v. New York Methodist Hosp.*, 861 F.3d 374, 378 (2d Cir. 2017).

### *Deliberate Indifference to Serious Medical Needs*

A prison official's deliberate indifference to a prisoner's serious medical needs constitutes cruel and unusual punishment in violation of the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *Spavone v. New York State Dep't of Corr. Servs.*, 719 F.3d 127, 138 (2d Cir. 2013). But a claim for deliberate indifference is not the same as a medical malpractice claim, because mere medical negligence does not establish that a doctor was deliberately indifferent to a prisoner's medical needs. *See Estelle*, 429 U.S. at 106; *Chance v. Armstrong*, 143 F.3d 698, 703 (2d Cir. 1998).

It is well established that a claim for deliberate indifference to serious medical needs has two requirements. "The first requirement is objective: the alleged deprivation of adequate medical care must be sufficiently serious. The second requirement is subjective: the charged officials must be subjectively reckless in their denial of medical care." *Spavone*, 719 F.3d at 138 (citations and quotation marks omitted). "The objective 'medical need' element measures the severity of the alleged deprivation, while the subjective 'deliberate indifference' element ensures that the defendant prison official acted with a sufficiently culpable state of mind." *Smith v. Carpenter*, 316 F.3d 178, 183–84 (2d Cir. 2003).

Defendants argue that there are no genuine fact issues as to the first element to support plaintiff's claim, *i.e.*, that he was deprived of appropriate treatment for a serious medical need. As an initial matter, I conclude there is at least a genuine fact issue to show that plaintiff's medical condition was a sufficiently serious medical need for purposes of sustaining an Eighth Amendment claim. *See, e.g.*, *Faraday v. Lantz*, 2005 WL 3465846, at *5 (D. Conn. 2005) (lower back pain and sciatic nerve may be sufficiently serious). The closer question is whether there is a genuine fact issue to suggest that plaintiff was actually deprived of appropriate treatment. As the Second Circuit has made clear, there is an important distinction between cases involving a denial of treatment and cases involving a delay in treatment. For cases involving a claimed delay in treatment, "the seriousness inquiry is narrower," and the analysis focuses "on the challenged delay or interruption in treatment rather than the prisoner's underlying medical condition alone." *Salahuddin v. Goord*, 467 F.3d 263, 280 (2d Cir. 2006) (internal quotations omitted).

The focus of plaintiff's claims is the delay between his first appointment with Dr. Pillai on July 15 and his later receipt of naproxen and an x-ray exam in early September.[1] I will

---

[1] Plaintiff states expressly in his briefing that his claims arise out of events occurring after he filed his grievance on July 7, 2016. Doc. #21 at 7.

consider the x-ray delay first. Dr. Pillai notes in his affidavit that the lapse of time between the order for the x-ray and the actual x-ray exam—about eight weeks—is "a little longer . . . than is typical." Doc. # 18-3 at 2 (¶ 9). But this delay did not compromise plaintiff's treatment in any way. *Ibid.* The x-ray revealed unremarkable results, *id.* (¶ 9), and the delay cannot be said to have contributed in any way to plaintiff's pain. "Courts have found that a plaintiff's allegations fail to meet the objective prong where the alleged delay in providing medical attention is neither the underlying cause of a plaintiff's condition nor contributed to a worsening in the condition." *Cuffee v. City of New York*, 2017 WL 1232737, at *9 (S.D.N.Y.), *report and recommendation adopted*, 2017 WL 1134768 (S.D.N.Y. 2017).[2]

Therefore, to the extent that plaintiff's Eighth Amendment claim rests on the delay in receiving an x-ray, plaintiff cannot show that this delay was sufficiently serious to be cognizable for Eighth Amendment purposes. *See Pierre v. Cty. of Broome*, 2007 WL 625978, at *5–6 (N.D.N.Y. 2007) (insufficient evidence of specific effects that delay had on medical condition); *Farid v. Ellen*, 2006 WL 59517, at *10–11 (S.D.N.Y. 2006) ("plaintiff has come forward with no evidence of how this alleged delay exacerbated his condition or worsened his prognosis for effective treatment," and therefore "no reasonable jury could conclude that the alleged delay in plaintiff's medical treatment caused any harm to him that would be actionable under the Eighth Amendment"), *aff'd in part and vacated in part on other grounds*, 593 F.3d 233 (2d Cir. 2010). To the extent it could be argued that the delay in administering the x-ray caused a delay in the

---

[2] By contrast, a far longer delay might well have sufficed to support an Eighth Amendment claim, depending in part on the pain or disability experienced in the interim. *See Rodriguez v. Manenti*, 606 F. App'x 25, 26–27 (2d Cir. 2015) (more than one year delay for arranging knee surgery to address chronic pain and intermittent disabling knee locking from gunshot injury to knee); *Salahuddin*, 467 F.3d at 281 (presuming that five-month delay of liver biopsy was "objectively serious" where plaintiff put forth evidence that he suffered pain during that period); *Hathaway v. Coughlin*, 841 F.2d 48, 50-51 (2d Cir. 1988) (more than two-year delay for surgery to correct broken pins in hip).

MRI exam, that delay, too, does not appear to have contributed in any meaningful way to plaintiff's pain.

The same is true regarding the delay in the receipt of naproxen, which involved a delay of nearly seven weeks. Plaintiff himself has admitted multiple times that naproxen was ineffective in treating his sciatic nerve pain. *See* Doc. #21 at 43 ("The pain meds are not working (Naproxen)"); *id.* at 44 ("[Discontinue] my order for naproxen because it does not work."). Indeed, plaintiff claims that none of the first line medications has been effective. Doc. #30 at 3-4. Therefore, no reasonable jury could conclude that the delay in the provision of naproxen amounted to a deprivation that was sufficiently serious to support a constitutional violation.

Plaintiff also claims that defendants' refusal to provide him a cane or a back brace constitutes deliberate indifference. This claim amounts to nothing more than a disagreement about the appropriate treatment, which is insufficient to support a claim of deliberate indifference. *See Chance*, 143 F.3d at 703. ("It is well-established that mere disagreement over the proper treatment does not create a constitutional claim.). The Eighth Amendment does not create a constitutional right for prisoners to receive canes or back braces, and plaintiff has not shown on the particular facts here that Dr. Pillai was no less than deliberately indifferent when deciding that a cane was not medically indicated. In short, notwithstanding plaintiff's experiencing of severe back pain, there is no genuine issue of fact to show that he was the victim of deliberate indifference to his serious medical needs by Dr. Pillai or other prison medical staff.

### *Retaliation*

"[T]o sustain a First Amendment retaliation claim, a prisoner must demonstrate the following: (1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the

7

protected speech and the adverse action." *Gill v. Pidlypchak*, 389 F.3d 379, 380 (2d Cir. 2004) (internal quotation marks omitted). "Only retaliatory conduct that would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights constitutes an adverse action for a claim of retaliation." *Davis v. Goord*, 320 F.3d 346, 353 (2d Cir. 2003) (internal quotation marks omitted). Courts should "approach prisoner retaliation claims with skepticism and particular care, because virtually any adverse action taken against a prisoner by a prison official—even those otherwise not rising to the level of a constitutional violation—can be characterized as a constitutionally proscribed retaliatory act." *Dolan v. Connolly*, 794 F.3d 290, 295 (2d Cir. 2015).

In its initial review order, the Court permitted plaintiff's retaliation claim to proceed against Dr. Pillai only. Doc. #7 at 7. There is little doubt that the grievances plaintiff filed constitute protected activity. *See Davis*, 320 F.3d at 352–53. But no genuine fact issue remains to suggest that Dr. Pillai's subsequent conduct was motivated by any retaliatory intent. *See Bilal v. White*, 494 F. App'x 143, 147 (2d Cir. 2012) (rejecting First Amendment retaliation claim stemming from delay in receipt of prescription drugs "for substantially the same reasons" as the Eight Amendment claim was rejected and noting that officials' "alleged comments relating to [prisoner's] filing of grievances do not, on their own or in combination with the other alleged acts, amount to actionable harm"). In fact, after the delay regarding the naproxen and the x-ray, Dr. Pillai continued to pursue more advanced diagnostic tests and pain therapy, despite the fact that plaintiff continued to write grievances. Accordingly, no reasonable jury could conclude that Dr. Pillai retaliated against plaintiff because of his filing of a grievance. Therefore, I will grant summary judgment in favor of defendants on plaintiff's retaliation claim.

**CONCLUSION**

Defendants' motion for summary judgment (Doc. #18) is GRANTED. Because of the Court's grant of defendants' summary judgment motion, plaintiff's motion for a preliminary injunction (Doc. #30) is DENIED as moot. The Clerk of Court shall close this case.

It is so ordered.

Dated at New Haven this 5th day of February 2018.

/s/ *Jeffrey Alker Meyer*
Jeffrey Alker Meyer
United States District Judge